# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| THEODORE R. WINDECKER | § | |
| | § | |
| V. | § | 1:18-CV-00898-LY |
| | § | |
| HANG WEI, et al. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Hang Wei's 12(b)(5) Motion to Dismiss for Insufficient Service, 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, and 12(b)(6) Failure to State a Claim (Dkt. No. 27), the Response (Dkt. No. 30), Reply (Dkt. No. 34), and Sur-Reply (Exh. A to Dkt. No. 36).[1] The district judge referred the motion to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. BACKGROUND

This is suit for breach of contract arising out of Theodore Windecker's sale of his ownership interest in a company to a Chinese company's American subsidiary (China Vast Int'l Ltd. and Windecker Aircraft Inc., respectively). The suit was originally filed in state court, and was subsequently removed to this Court. After removal, the Defendants filed a motion to dismiss, which the Court granted in part and denied in part. Specifically, the Court dismissed Windecker's negligent misrepresentation and economic duress claims against all Defendants for failure to state a claim, but denied the motion seeking to dismiss the claims against Windecker Aircraft Inc. for lack of personal

---

[1] The Court hereby **GRANTS** Plaintiff's motion seeking leave to file the sur-reply (Dkt. No. 36) and directs the Clerk to file the sur-reply with the papers of this case.

jurisdiction. In this motion, Hang Wei, the sole owner of China Vast Int'l Ltd. (which in turn is the sole owner of the Windecker Aircraft), requests that the Court dismiss the case for: (1) insufficient service of process; (2) lack of personal jurisdiction; and (3) failure to state a claim.

## II. LEGAL STANDARDS

Rule 12(b)(5) allows a defendant to seek dismissal when the method by which he was served is defective. FED. R. CIV. P. 12(b)(5). Once the defendant objects to the method of service by identifying how the plaintiff's attempt at service was defective, the burden shifts to the plaintiff to establish that the method of service is proper. *Freedom Watch, Inc. v. Org. of the Pet. Exporting Countries (OPEC)*, 766 F.3d 74, 78 (D.C. Cir. 2014). "The general rule is that '[a] signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence.'" *People's United Equip. Fin. Corp. v. Hartmann*, 447 Fed. Appx. 522, 524 (5th Cir. 2011) (quoting *O'Brien v. R.I. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)). Thus, if the plaintiff meets the burden of showing proper service, the burden shifts to the defendant to present strong and convincing proof of insufficient service. *Id.*

A defendant who is not a resident of the suit's forum may move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). "If . . . the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion. . . ." *Id.* (internal quotations and citations omitted). "Although jurisdictional allegations must be accepted as true,

such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Id.* The plaintiff must prove that the court has jurisdiction over the defendant with regard to each claim. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006).

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if (1) the state's long-arm statute permits an exercise of jurisdiction over that defendant, and (2) an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha,* 882 F.3d at 101; *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *cert. denied,* 131 S.Ct. 68 (2010). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether this Court's exercise of personal jurisdiction over the Defendants would be consistent with due process. *Id.* The Supreme Court has articulated a two-part test to determine whether a federal court sitting in diversity may properly exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have sufficient "minimum contacts" with the forum state, and (2) subjecting the nonresident to jurisdiction in the forum state must not offend traditional notions of "fair play and substantial justice." *McFadin*, 587 F.3d at 759 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). A defendant's "minimum contacts" may give rise to either specific or general personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state. *Jackson v. Tanfoglio Giuseppe, S.R.L.,* 615 F.3d 579, 584 (5th Cir. 2010).

In this Circuit, specific personal jurisdiction is a claim-specific inquiry; a plaintiff bringing multiple claims that arise out of different forum contacts must establish specific jurisdiction for each claim. *McFadin,* 587 F.3d at 759. Specific jurisdiction applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries

3

that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). The touchstone of specific-jurisdiction analysis is "whether the defendant's contact shows that it reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759. Even a single contact can support specific jurisdiction if it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Sangha*, 882 F.3d at 103 (quoting *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014). Due process requires that specific jurisdiction be based on more than the "random, fortuitous, or attenuated" contacts a defendant makes by interacting with people affiliated with the forum state. *Walden v. Fiore*, 571 U.S. 277, 286 (2014). The plaintiff thus "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285.

Finally, Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has explained that a court need not accept as true conclusory allegations or allegations stating a legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain sufficient

4

facts "to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

#### A. Service of Process

Hang complains first that Windecker's service of the suit on him was deficient. Windecker served Hang by having a process server leave a copy of the petition and summons with Hang's wife, at a home in North Carolina owned by Hang and his wife. Windecker contends that this was sufficient under Rule 4(e)(2)(B), as he left "a copy of [the summons and complaint] at [Hang's] dwelling or usual place of abode with someone of suitable age and discretion who resides there [Hang's wife]." FED. R. CIV. P. 4(e)(2)(B). Hang's primary contention is that Windecker could not serve him at the North Carolina house, but was instead required to serve him pursuant to the Hague Convention because Hang is a national of the Peoples Republic of China. Secondarily, Hang argues that even if service under Rule 4(e) was permitted, the service in North Carolina was deficient because the house there is not his "dwelling or usual place of abode."

Hang is incorrect that Windecker was not permitted to serve him pursuant to Rule 4(e) simply because Hang is a citizen of China, and his permanent residence is there. The plain text of Rule 4 says otherwise. Rule 4 is not focused on the citizenship of the person being served, but rather on *where* the service takes place. Thus, Rule 4(e) pertains to "serving an individual *within* a judicial district of the United States," while 4(f) addresses "serving an individual *in* a foreign country." FED. R. CIV. P. 4(e) & (f) (emphasis added). *Glencore Ltd. v. Occidental Argentina Expl. & Prod. Inc.*, 2012 WL 591226 (S.D. Tex. Feb. 22, 2012) (addressing service on a foreign corporation, noting that

5

"the Hague Convention does not override state laws that allow foreign corporations to be served domestically," and thus "if domestic service on a foreign corporation were effected properly, the Hague Convention would not require additional, international service") (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988)). The question is therefore not what country Hang is a citizen of, but whether the North Carolina house where the summons was left can be considered Hang's "dwelling or usual place of abode" for Rule 4's purposes.

In a declaration attached to the motion, Hang testifies—somewhat vaguely—that he is "domiciled" in Chengdu, China where he "own(s) a home and conducts business." Dkt. No. 27-1 at 2. He further states that his wife "has lived in North Carolina periodically with my daughter in a house there." *Id.* He makes no mention that the "house there" is owned by Hang and his wife. Windecker contends in his declaration that Hang's wife, daughter and mother-in-law reside in the home. He states that when Hang and his wife first visited with him (in Texas), Windecker and his wife discussed housing and school options with the Hangs, as the Hangs' stated their intention was for Hang's wife and daughter to relocate to the U.S. so their daughter could attend school there. Dkt. No. 30 at 29. And when he visited Hang in North Carolina, they met at Hang's house, and at that time Hang's wife, daughter and mother-in-law were living there. *Id.* And though the Hangs subsequently sold that house, they simultaneously purchased a different home in North Carolina. The property records in Mecklenburg County reflect that the owners of the house are Hang and his wife, and the grantee section on the warranty deed was manually altered to add Hang as a grantee, when that section originally only listed his wife, suggesting that the parties plainly wanted it to be clear on the deed that *Hang* was an owner of the house. *Id.* at 29-30, 36.

6

The Fifth Circuit has noted that "no hard and fast rule can be fashioned to determine what is or what is not a party's 'dwelling house or usual place of abode.'" *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir. 1967). Further, the Circuit has noted that the "construction of [Rule 4] varies according to whether the defendant received notice of the suit. [Rule 4] should be broadly construed where the defendant, as in this case, received notice of the suit." *Id.* Hang undoubtedly received actual notice of the suit more than a year ago when the suit was served on the corporation he is the sole owner of and its wholly-owned subsidiary, both of which were served through Hang's wife—the registered agent for both companies—in North Carolina. Further, Hang is represented by the same counsel as China Vast and Windecker Aircraft. Given this, the Court is to construe Rule 4 broadly in determining whether the North Carolina home is Hang's dwelling or usual place of abode. Doing so, the Court finds that Windecker has carried his burden on this issue, and Hang has failed to rebut Windecker's evidence. Hang's declaration vaguely stated that he was "domiciled" in China and owned a house there. Windecker's responsive evidence shows that Hang's family has resided primarily in North Carolina, and the couple recently purchased a new $1 million home there. Hang offered nothing in response to this in his reply. This does not amount to the "strong and convincing evidence" required to overcome Windecker's demonstration. *People's United Equip.* 447 Fed. Appx. at 524. Hang's Rule 12(b)(5) motion challenging the service of process should be denied.

**B.     Personal Jurisdiction**

Hang next contends that he is not subject to jurisdiction in Texas. Both parties submit evidence on this issue, including Windecker's evidence showing that Hang had a significant number of contacts with Texas specifically related to the issues involved in this suit. *See* Dkt. No. 30 at 8 (listing contacts). Hang does not contest that these visits took place. Instead, in response he relies

primarily on the same argument discussed in the next section—that all of his contacts with Texas were taken in his capacity as a corporate officer of China Vast and Windecker Aircraft, and thus these contacts only subject *those companies* to jurisdiction, not him. Windecker responds that jurisdiction over Hang exists if the corporations he was acting for were merely Hang's alter egos, and cites authority for the proposition that if he can make out a basic claim for alter ego liability then Hang is subject to suit in Texas individually as well.

As discussed in more length in the next section, the Court does not believe that Windecker has pled a colorable alter ego claim against Hang. As the sole basis for Windecker's jurisdiction argument is the alter ego claim,[2] the dismissal of that claim also means the court lacks personal jurisdiction over Hang. Because the Court must permit Windecker leave to amend to try to cure the deficiencies in the breach of contract claims, resolution of the personal jurisdiction issue must await any amendment by Windecker and additional litigation on the sufficiency of that amendment.

**C.    Failure to State a Claim**

In his final motion, Hang argues that Windecker has failed to state a claim against him. When Hang filed the motion, Windecker's claims were: (1) a request for a declaration that the 2016 memorandum agreement he signed was executed under economic duress; (2) a request for a declaration that the Unit Purchase Agreement is terminated; (3) breach of contract claims under both the UPA and the Employment Agreement; and (4) a negligent misrepresentation claim. As noted earlier, the Court previously dismissed the economic duress and negligent misrepresentation claims. Accordingly, the only remaining claims are a request for declaratory relief on a contract, and the two

---

[2]Windecker also argued that the Court could exercise pendent personal jurisdiction over Hang based on the tort claims, but those claims have since been dismissed so this argument is no longer viable.

8

breach of contract claims. As to these claims, Hang argues they should all be dismissed because he is not a signatory to any of the contracts, and Windecker has failed to state a claim that the corporate veil may be pierced. Under Texas law, an owner of a corporation may not be held liable for:

> any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory . . . [but this] does not prevent or limit the liability . . . if the obligee demonstrates that [the owner] caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the . . . owner. . . .

TEX. BUS. ORG. CODE § 21.223(a)(2) & (b). Windecker's sole argument to hold Hang liable for the contract claims is the assertion that Hang used both corporations to perpetrate a fraud on Windecker, for Hang's direct personal benefit. In his words, Windecker's argument is that "Hang is the sole member of China Vast. China Vast is the parent company and sole owner of Windecker Aircraft. Hang may be held vicariously liable for breach of contract because of the direct personal benefits he received in using the companies to perpetrate a fraud on Windecker." Dkt. No. 30 at 14 (citations omitted). Generously, this is purely conclusory, and lacks any factual details to support it.

Further, even if these conclusory facts are accepted, they are insufficient to meet the high standard set by Texas law for piercing the corporate veil for a contract claim. For example, in a recent case in the San Antonio Division of the Court, Judge Rodriguez summarized the statute cited above as requiring that the plaintiff "show the individual committed actual fraud for his direct personal benefit." *Bates Energy Oil & Gas v. Complete Oildfield Svcs.*, 361 F.Supp. 3d 633, 665 (W.D. Tex. 2019). And, he noted,

> [w]hile 'primarily for the direct personal benefit' of the individual is not defined, most cases finding the requirement to have been met had evidence showing that funds derived from the corporations' allegedly fraudulent conduct were pocketed by

9

or diverted to the individual defendant. When the funds were used for the corporation's benefit, that has been held insufficient, even where it indirectly benefits the corporate officers and agents because the corporation is able to live another day due to its ability to satisfy some demands or because their ownership interest retains its value, and this appears true even where the individual is the sole shareholder and where corporate formalities are disregarded.

*Id.* at 673 (internal punctuation and citations omitted). Assuming for the sake of argument Windecker has pled sufficient facts to demonstrate Hang committed fraud, Windecker's best case on the facts he has pled is still not enough. In his petition, Windecker alleges that any funds Hang fraudulently failed or refused to pay Windecker were instead diverted to other business ventures or projects. *See, e.g.* Dkt. No. 1-2 at ¶ 1, 48, 50; 1-3 at ¶¶ 58, 73. This case therefore falls squarely within the class of cases where courts have found the facts insufficient to state a claim to pierce the corporate veil because the pleadings failed to show any fraud was for the individual's "direct personal benefit." Accordingly, the claims against Hang should be dismissed for failure to state a claim, subject to Windecker being given an opportunity to amend his pleadings to cure the deficiency.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' Motion (Dkt. No. 27) be **GRANTED IN PART and DENIED IN PART**. Specifically, the undersigned recommends that the 12(b)(5) Motion to Dismiss for Insufficient Service be **DENIED**, and the 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and 12(b)(6) Failure to State a Claim be **GRANTED,** subject to repleading by Windecker by a date certain to be set by the district judge, to attempt to state a veil piercing claim.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)© (2006); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Lisson v. O'Hare*, 326 F. App'x 259, 260 (5th Cir. 2009).

SIGNED this 16th day of January, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE